Alan E. Wisotsky (SBN 68051)
Dirk DeGenna (SBN 188972)
LAW OFFICES OF ALAN E. WISOTSKY
300 Esplanade Drive, Suite 1500
Oxnard, California  93036
Tel:    (805) 278-0920
Fax:    (805) 278-0289
E-mail:  lawyers@wisotskylaw.com

Attorneys for Defendants THE CITY OF OXNARD, THE OXNARD POLICE DEPARTMENT, CHIEF JOHN CROMBACH, OFFICER MARC AMON, OFFICER ROBERT VALENZUELA, OFFICER MICHAEL VELASQUEZ, and TRAFFIC SERVICE CADET JESUS TOPETE

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN MANUEL BANALES VENEGAS, an individual,<br><br>        Plaintiff,<br><br>    v.<br><br>THE CITY OF OXNARD, THE OXNARD POLICE DEPARTMENT, CHIEF JOHN CROMBACH, OFFICER MARC AMON, OFFICER ROBERT VALENZUELA, OFFICER MICHAEL VELASQUEZ, TRAFFIC SERVICE CADET JESUS TOPETE, and DOES 1-10.<br><br>        Defendants. | No. CV 09-05690 RC<br><br>**JOINT RULE 26(f) REPORT FOR 16(b) SCHEDULING CONFERENCE** |

   This joint report is submitted for the 16(b) scheduling conference on behalf of plaintiff, Juan Manuel Banales Venegas, by his counsel, Brian A. Vogel, and on behalf of defendants the City of Oxnard, the Oxnard Police Department, Chief John Crombach, Officer Marc Amon, Officer Robert Valenzuela, Officer Michael Velasquez, Traffic Service Cadet Jesus Topete, by their counsel, Dirk DeGenna and Alan E. Wisotsky.

(a) Statement of the Case: This case involves an allegation of excessive force by police officers investigating a call regarding a noise complaint. The plaintiff has asserted causes of action under 42 U.S.C. §1983, alleging violation of his Fourth Amendment right to be free from the use of excessive force by the individual defendant officers. The plaintiff alleges that on August 5, 2007, he attended a party at 300 Erica Place in Oxnard, California. Police officers, apparently responding to a noise complaint, came to the backyard of the house where Plaintiff was talking on his cell phone to a friend. At least two officers stood on the outside of the fence surrounding the yard and began shining their flashlights into the yard. One of the officers indicated to the Plaintiff that they wanted to come into the yard.

Although witness accounts differ as to exactly what Plaintiff said in response to the officer's request, Plaintiff did not represent that he lived at the apartment and did not give the officers consent to enter the yard. Defendants Valenzuela and Velasquez eventually jumped over the fence and into the yard. While Plaintiff was still talking on his cell phone to a friend, defendants Valenzuela and Velasquez grabbed him and forcibly moved him toward the front of the house. At the moment that the officers seized Plaintiff, he was behaving peacefully, had not made any threatening gestures, and was holding a cell phone in one hand and a soda in the other. Suddenly, one of the officers attempted to pull Plaintiff's hand behind his back thereby causing Plaintiff to spill his soda. Defendant Velasquez quickly placed Plaintiff in a bear hug type hold and then slammed him to the ground, which thereby caused injury to Plaintiff and broke his eyeglasses.

Defendant Valenzuela then jumped on Plaintiff and tased him while he was subdued on the ground. Also, while the Plaintiff was subdued on the ground, either defendant Velasquez or Valenzuela or both these defendants repeatedly punched Plaintiff. Defendant Cadet Topete joined defendants Valenzuela and Velasquez in climbing on top of Plaintiff by grabbing Plaintiff's legs and holding him while one or both of the other two defendants continued to strike Plaintiff. Eventually, the defendants handcuffed Plaintiff and then dragged him away to a police car.

Plaintiff sat handcuffed in the back of the police car, beaten and bloodied, for approximately half an hour until another police officer, who Plaintiff believed to be a Sergeant, arrived and began directing the investigation and giving orders to the other officers at the scene. The Sergeant asked Plaintiff what he could do to fix the situation. The Sergeant then offered to give Plaintiff either a ticket and let him go home or take him to the hospital. Plaintiff asked to be given a ticket and released but his request was ignored.

After more than an hour, Plaintiff was taken to the police station and questioned at length. His fingerprints were taken and photos were taken of the developing bruises on his face, stomach, arms, and back. Plaintiff was ordered to urinate in a cup to be tested for drugs and he complied. Eventually, Plaintiff was taken to the hospital, examined, and cleared for booking. Rather than booking Plaintiff into the Ventura County Jail, Plaintiff was taken back to the Oxnard Police Department and eventually released.

The arresting officers submitted materially false police reports describing the events of August 5, 2007. On information

and belief, the defendant police officers, Cadet Topete and DOES 1 through 5 also submitted materially false police reports describing the events of August 5, 2007.

Plaintiff was charged in Ventura County Superior Court with a single violation of Penal Code § 148(a)(1) (resisting, obstructing, or delaying defendant Valenzuela in the lawful performance of his duties). This criminal complaint was based on evidence falsified by defendants Amon, Valenzuela, Velasquez, Topete and DOES 1 through 5. Unable to prosecute based on the false reports and statements by defendants Amon, Valenzuela, Velasquez, Topete and DOES 1 through 5, the District Attorney moved to dismiss the criminal complaint in its entirety on December 26, 2007.

The plaintiff further claims the existence of *City of Canton* municipal liability on the ground that there exists a custom, practice, or policy of failing to train the City's officers appropriately regarding use of force. The plaintiff further claims the existence of *Monell* municipal liability on the ground that there exists a custom, practice, or policy of deliberately indifferently causing violations of citizens' civil rights by inappropriate use of force and a pattern and practice of failing to discipline officers following their use of excessive force.

Defendants contend that the defendant officers responded to a noise complaint concerning a loud party. Oxnard police officers Robert Valenzuela and Michael Velasquez were dispatched to the residence of the reporting party at 2166, accompanied by Oxnard TSA, Jesus Topete. The address of the reporting party is located within a condominium complex. Upon the officers' arrival, they determined that the source of the noise was a party at a residence

located behind the condominium complex at 300 Erica Place. The two locations were divided by a wall. The officers stood at the wall and shined flashlights into the backyard of 300 Erica Place in an effort to establish contact with the subjects in the backyard.

The officers caught the attention of the plaintiff. Based upon statements by plaintiff, the ofrficers believe he was the property owner and/or was in charge of the party. Plaintiff was uncooperative. The officers repeatedly asked plaintiff for identification so that they could possibly issue him a warning regarding the disturbance which the party was causing to the reporting party. Plaintiff stated to the officers that if they wanted to come over, they could; however, he did not know what was going to happen.

The officers contacted plaintiff in the backyard by climbing over the wall, and plaintiff became very uncooperative. The officers attempted to control the plaintiff, the plaintiff became combative and swung at Officer Valenzuela, but missed, however, the punch struck Officer Velasquez. Officer Velasquez grabbed plaintiff in a bear hug, and the two fell to the ground. The struggle continued on the ground. Officer Valenzuela saw that Officer Velasquez's firearm was compromised. Given the nature of the confrontation and the fact that there was a large group of people, Officer Valenzuela believed there was an officer safety issue. In order to gain plaintiff's compliance as soon as possible and restrain the plaintiff, Officer Valenzuela utilized his department-issued Taser in a drive-stun fashion. The first cycle was ineffective. He cycled the Taser a second time in the area of plaintiff's stomach, and this time it was effective. Plaintiff stopped fighting and the officers were able to restrain him.

During the course of the struggle, TSA Jesus Topete attempted to assist the officers by grabbing hold of plaintiff's legs.

Defendants deny the existence of any custom, practice, or policy which deliberately indifferently proximately caused the deprivation of the plaintiff's constitutional rights. The plaintiff was actively resisting the officers' lawful instructions.

(b) Subject Matter Jurisdiction: Subject matter jurisdiction is conferred by the provisions of 28 U.S.C. §§1331 and 1343, as well as 42 U.S.C. §§1983 and 1988.

(c) Legal Issues: The legal issues involved in this litigation include: the existence or absence of a constitutional violation; qualified immunity for the individual defendants; Chief Crombach as a redundant defendant (*Luke v. Abbott*, 954 F.Supp. 202 (C.D. Cal. 1997)); municipal-*Monell* liability; and the extent of damages, attorneys' fees, and costs.

(d) Parties and Evidence: The parties are the plaintiff, Juan Manuel Banales Venegas, and the defendants, who are police entities or officers. These are the City of Oxnard, the Oxnard Police Department, Chief John Crombach, Officer Marc Amon, Officer Robert Valenzuela, Officer Michael Velasquez, Traffic Service Cadet Jesus Topete.

The witnesses presently known are the plaintiff, the officers, the plaintiff's girlfriend (Daniela Alarcon), and nine party goers in attendance at the party who may have witnessed some of the events (Elizabeth Rodriguez, Jessica Montrerrosa, Javier Nunez, Elias Carrillo, Julio Zumudio, Rodrigo Aguilar, Alysa Allen, Jose Guido and Esteban Ramos). Additionally, defendants identify six police officers who responded to the scene and participated in the

resulting investigation (Edward Kasaba, Daniel Shrubb, Joseph Floriano, Richard Marquez, Steve Kawaguchi, and Steve Moore). The other witnesses are presently unknown but would be in the nature of experts, such as the emergency room doctor and retained experts, including police practices expert witnesses and independent medical examiners.

(e)  Damages:  The plaintiff did not sustain any severe or permanent injuries so the case does not involve neurological damage, paralysis, fractured bones, or disfigurement. The realistic range of provable compensatory damages is $0 to $50,000.

(f)  Insurance:  There is no reservation of rights, other than as to the requisite reservation for punitive damages required by Government Code Section 825(d) and the Ninth Circuit decision in *Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001).

(g)  Motions:  The plaintiff presently does not contemplate any pretrial motion filings, other than motions in limine. Defendants may seek summary judgment for Chief Crombach and the two municipal defendants (as there was no deliberately indifferent custom, practice, or policy proximately causing the deprivation of constitutional rights). If discovery demonstrates evidence warranting qualified immunity, a summary judgment motion may be proper on that ground as well for the individual officers.

(h)  Manual for Complex Litigation:  None of the procedures from the Manual for Complex Litigation should be utilized.

(i)  Status of Discovery:  No discovery has yet been conducted as of this writing, with the exception of complete exchange of all documents by the parties at the early meeting of counsel conducted on January 15, 2010, and/or within the 14 days permitted by FRCP

26(a)(1)(C). These documents included police reports, witness interview statements, court documents, medical records, photographs, and a recording.

(j) Discovery Plan: The parties have agreed to engage in written discovery. The written discovery will likely consist of interrogatories, requests for admission, and requests for identification and production of documents. All medical and employment records will be subpoenaed once disclosed in discovery. Upon completion of written discovery and review of subpoenaed records, the parties will proceed with depositions of the parties. It is anticipated that depositions will commence by April 2010 and will be completed by August 2010. No changes in the Rule 26(a) disclosure should be made. It will not be necessary to conduct discovery in phases or to otherwise limit discovery, with the possible exception of the plaintiff's contemplated effort to obtain the officers' personnel files. The Court need not enter any other orders in this regard.

(k) Discovery Deadline: The parties contemplate completion of all non-expert discovery before August 4, 2010.

(l) Expert Discovery: The parties respectfully propose an initial Rule 26 expert witness report deadline of August 4, 2010. The parties also respectfully propose a Rule 26 supplemental and/or rebuttal expert witness report deadline of September 7, 2010. The parties also seek an order establishing October 7, 2010, as the deadline for completion of depositions.

(m) Dispositive Motions: Defendants acknowledge the potential for a qualified immunity summary judgment motion for the individual defendants, who applied the force to the plaintiff.

Defendants also reserve the right to move for summary judgment on the issue of the propriety of including the police chief, who had no personal involvement in this matter whatsoever, under *Kentucky v. Graham* and *Luke v. Abbott*, as he is simply a supernumerary party in that the plaintiff has already named the two municipalities for *Monell*-municipal liability. Defendants also contemplate the potential for a summary judgment motion on the *Monell* issue after sufficient time for discovery has elapsed, in that there was no deliberately indifferent custom, practice, or policy which proximately caused the alleged deprivation of constitutional rights, under the *Monell* formulation.

(n) In Limine Motions: Plaintiff anticipates motions in limine to limit expert testimony and to exclude prejudicial, irrelevant, or otherwise inadmissible evidence. Defendants contemplate motions in limine as follows:

(1) To bifurcate the *Monell* issue, if there is still a *Monell* issue by the time of trial, into its own separate phase, under the Ninth Circuit decision in *Quintanilla v. City of Downey*, 84 F.3d 353 (9th Cir. 1996);

(2) To exclude the plaintiff's criminal prosecution and its dismissal;

(3) To exclude evidence of lesser intrusive alternatives to the force actually utilized, under the Ninth Circuit decisions in *Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994), *Forrester v. City of San Diego*, 25 F.3d 804 (9th Cir. 1994), and *Billington v. Smith*, 292 F.3d 1177 (9th Cir. 2002);

(4) To exclude any prior or subsequent uses of force by the officers, as improper character evidence not meeting the five-

part test articulated by the Ninth Circuit decision in *Duran v. City of Maywood*, 221 F.3d 1127 (9th Cir. 2000);

(5) To exclude any hiring and background records of the officers as not predictably demonstrating a proximate causal link to the alleged violation which occurred in this case, even in the *Monell* phase, under the Ninth Circuit decisions in *Van Ort v. Stanewich*, 92 F.3d 831 (9th Cir. 1996), and *McDade v. West*, 223 F.3d 1135 (9th Cir. 2000);

(6) To exclude police practices experts;

(7) To limit all evidence to the explicit time frame requirement under *Graham v. Connor*, 490 U.S. 386 (1989), to the force used "at the moment" of the challenged seizure, in accordance with sister-circuit authority, including *Schulz v. Long*, 44 F.3d 643, 648 (8th Cir. 1995);

(8) To exclude evidence that the officers created the need to use the force deployed;

(9) To exclude the involved agency's policies and procedures, as well as those of other police entities. These do not comprise the content of the Fourth Amendment but, rather, provide the potential for discipline under the municipal employer's policies. *Whren v. United States*, 517 U.S. 806 (1996), *James v. Parole Commission*, 159 F.3d 1200 (9th Cir. 1998), and *Smith v. Freland*, 954 F.2d 343 (6th Cir. 1992).

(o) Settlement Discussions and Potential: Counsel conducted an exploration of settlement potential at the early meeting of counsel; however, based upon the disparate factual allegations, a settlement at this juncture is premature. The issue will be discussed again at a later time once the parties have had an oppor-

tunity to depose witnesses. In accordance with Central District Local Rule 16-15.4, the parties select a settlement mechanism under which the assigned magistrate judge would hold a settlement conference.

(p)  Trial Estimate: The parties contemplate a five-day jury trial. The parties estimate calling approximately 25 witnesses. The parties request a trial date of December 7, 2010.

(q)  Trial Counsel: The plaintiff will be represented during trial by his counsel of record, Brian A. Vogel. The defendants will be represented during trial by lead trial counsel, Alan E. Wisotsky, and by second-chair counsel, Dirk DeGenna.

(r)  Independent Expert or Master: The appointment of an independent expert or master is unnecessary in this litigation.

(s)  There are no other issues or complexities in this litigation. Defendants will move the Court in limine to bifurcate the entity liability determination under *Monell*.

Dated: January 26, 2010

BRIAN A. VOGEL
Attorney for Plaintiff

Dated: January 29, 2010

DIRK DeGENNA
Attorney for Defendants